# Richmond

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY V.
ROSIE S. PEDERSON AND RICHARD A. SHARP.

January 13, 1947.

Record No. 3149.

Present, Holt, C. J., and Hudgins, Gregory, Eggleston, Spratley and
Buchanan, JJ.

944

The opinion states the case.

*Robert Lewis Young* and *John B. Browder*, for the plaintiff in error.

*James O. Heflin* and *Jones & Jones*, for the defendants in error.

EGGLESTON, J., delivered the opinion of the court.

On December 9, 1944, the State Farm Mutual Automobile Insurance Company issued to Richard A. Sharp of Hopewell, its policy insuring him against liability for personal injury and property damage which he might incur in the operation of his automobile, for the period beginning on the date of the policy and ending on June 9, 1945.

On June 5, 1945, while the car was being operated by Sharp, it was in collision with another driven by Mrs. Rosie S. Pederson. Mrs. Pederson obtained a judgment against Sharp for damages to her car and personal injuries suffered by her in the collision. Sharp having failed to satisfy the judgment, Mrs. Pederson undertook to collect it by garnish-

ment proceeding against the Insurance Company. The latter defended on the ground that prior to the accident the policy had been effectually canceled in accordance with its terms.

By consent of the parties, all matters of law and fact were submitted to the trial court without a jury, which found that the policy had not been canceled and that it was still in effect. Accordingly, judgment was entered against the Insurance Company in favor of Mrs. Pederson for the amount sought to be recovered. The matter is now before us on a writ of error to the judgment awarded the Insurance Company.

The facts are not in dispute. The policy contained this provision:

"Cancelation. This policy may be canceled by the named insured by mailing to the company written notice stating when thereafter such cancelation shall be effective. This policy may be canceled by the company by mailing to the named insured at the address shown in this policy written notice stating when not less than five days thereafter such cancelation shall be effective. The mailing of notice as aforesaid shall be sufficient proof of notice and the effective date and hour of cancelation stated in the notice shall become the end of the policy period. Delivery of such written notice either by the named insured or by the company shall be equivalent to mailing.

"If the named insured cancels, earned premiums shall be computed in accordance with the customary short rate table and procedure. If the company cancels, earned premiums shall be computed pro rata. Premium adjustment may be made at the time cancelation is effected and, if not then made, shall be made as soon as practicable after cancelation becomes effective. The company's check or the check of its representative mailed or delivered as aforesaid shall be a sufficient tender of any refund of premium due to the named insured."

Under date of May 23, 1945, Sharp wrote the home office of the Insurance Company as follows:

"Please cancell my Pol. #34230-NS-46 as of today.

"Please return my unearned prem.

"I am getting rid of my car and will not need insurance.

"Thanking you for your cooperation."

The postmark shows that this letter was mailed on May 25, and was received at the home office of the Insurance Company on May 28.

Under date of May 29, the Insurance Company wrote Sharp thus:

"We are in receipt of your communication regarding the cancellation of the above numbered policy which was issued in your favor.

"Your request has been referred to our agent, Mr. J. E. Nemetz of R. F. D. #1, Hopewell, Va., for attention."

On June 4, Nemetz, the local agent of the Insurance Company, filled out, in his own handwriting, a "Policy-holder's Request For Cancellation," dated June 4, in which it was stated that the policy had been canceled "effective May 25, 1945," for the reason that the car had been "disposed of." Nemetz attached to this form a personal note, addressed to Sharp, requesting him to sign and return the document. This was mailed by Nemetz to Sharp on June 4. However, the "Policyholder's Request For Cancellation" was never signed by Sharp, and, as has been said, the accident occurred on June 5.

Under date of June 9 the company sent Sharp a printed form letter soliciting the renewal of his policy expiring on that day.

On June 15 the company wrote Sharp that in accordance with his request it had canceled his policy, "effective 12:01 A. M., May 25, 1945." In the same letter it advised him that he was entitled to no premium refund by reason of the cancelation.

Sharp notified the company promptly of the institution of Mrs. Pederson's suit against him, and in reply, under date of July 9, received a letter denying liability for the claim on the ground that the policy had been previously canceled, "effective May 25, 1945."

The question we have to decide is whether, under these circumstances, the policy had been effectively canceled, or whether it was in full force and effect at the time of the accident.

Provisions of this character, giving either the insured or the insurer the right to cancel the contract upon notice to the other, are frequently embodied in liability insurance, fire insurance and certain other types of policies. 29 Am. Jur., Insurance, section 275, p. 257. They have been the subject of much litigation, consequently the principles governing their interpretation and application are well settled.

Under such provisions either party has the right, by complying with the terms of the policy, to terminate the contract. The consent of the other party is not necessary to effect a cancelation.

In 45 C. J. S., Insurance, section 458, pp. 115, 116, this is said: "If by statute or contract insured has the privilege of canceling the policy at his pleasure, the company's consent is not a prerequisite to cancellation; and no formal cancellation or physical defacement of the policy is required." See also, 29 Am. Jur., Insurance, section 294, pp. 270, 271; 6 Couch Cyc. of Insurance Law, section 1406, p. 5024.

As was said in *Crown Point Iron Co. v. Aetna Ins. Co.*, 127 N. Y. 608, 28 N. E. 653, 655, 14 L. R. A. 147,* "while it takes two to make a contract, one may end it, if the contract itself so provides. * * * The contract, through the force of its own provisions, is ended by the action" of the insured only. Indeed, the court said, such cancelation becomes effective "even if the insurer absolutely refuses it (the policy) to be canceled."

In *Roberta Mfg. Co. v. Royal Exchange Assur. Co.*, 161 N. C. 88, 76 S. E. 865, 869, it was said: "A request thus made operates to cancel the policy, even if the insurer absolutely refuses to permit it to be done." See also, *Johnson v. Rhode Island Ins. Co.*, 174 N. C. 201, 93 S. E. 735.

---

*This is perhaps the leading case on the subject. See also, *Gately-Haire Co. v. Niagara Fire Ins. Co.*, 221 N. Y. 162, 116 N. E. 1015, Ann. Cas. 1918C, 115.

The case of *Union Marine, etc., Ins. Co.* v. *Kuljis*, C. C. A. 9, 70 F. (2d) 231, is somewhat similar to the case at bar. There a marine fire insurance policy was issued on a fishing vessel on June 30, 1932. Under the terms of the policy either party had the right to cancel it on ten days' notice to the other. If canceled by a notice given by the insurance company, the insured was to receive the prorata unearned premium. If canceled at the request of the insured, he was to receive a refund of the unearned premium calculated upon the short rate basis.

On August 29 the insured, who had not paid the premium, wrote the local agent of the insurance company stating: "I wish to cancel this policy because I am unable to carry it on longer." He pointed out in his letter that the fishing season had not been successful. On August 30 the local agent wrote the insured that the amount of premium which would be required to carry the policy to August 29, would also carry it through the fishing season which would end in November of that year. For that reason he urged the insured to defer the cancelation of the policy until the end of the season. The insured again wrote, insisting upon his desire and intention to cancel the contract. Some correspondence then ensued between the general agent and the local agent as to whether the company's records should show that the policy was canceled "on request," pursuant to the cancelation clause, or for failure to pay the premium. Before this matter was settled the vessel burned.

In a suit to recover the amount of the policy there was a judgment for the plaintiff which the Circuit Court of Appeals reversed on the ground that the original letter of the insured contained "unmistakable language evidencing his determination to cancel the policy," that such unilateral act was sufficient to terminate the contract even though the company had not consented thereto, and that the act of the local agent in unsuccessfully attempting to persuade the insured to continue the contract did not invalidate the cancelation.

Moreover, it is equally well settled that where a

notice to cancel a policy is given in accordance with its terms, the contract is *ipso facto* terminated, and the obligation of the insurance company to return the unearned premium, if any, to the insured merely creates the relationship of debtor and creditor between the company and the insured with respect to that item. 29 Am. Jur., Insurance, section 294, pp. 270, 271; *Gately-Haire Co.* v. *Niagara Fire Ins. Co.,* 221 N. Y. 162, 116 N. E. 1015, 1017, Ann. Cas. 1918C, 115; *Johnson* v. *Rhode Island Ins. Co., supra* (93 S. E., at page 736); *Hicklin* v. *State Farm Mut. Automobile Ins. Co.,* 176 S. C. 504, 180 S. E. 666, 669; *Prillaman* v. *Century Indemnity Co.,* C. C. A. 4, 138 F. (2d) 821, 823; *Eicher-Woodland Co.* v. *Buffalo Ins. Co.,* 198 La. 38, 3 So. (2d) 268, 272.

In order for an insured to terminate the contract under a provision of this character, his notice or request must be unconditional and absolute, and must conform to the requirements of the policy. Whether a particular communication should or should not be construed as a notice or request for cancelation will depend upon the intent of the insured as ascertained from his communication or all the circumstances. 45 C. J. S., Insurance, section 458, p. 117.

As is said in 12 Am. Jur., Contracts, section 446, p. 1029, "A notice for the rescission or termination of a contract must be clear and unambiguous, conveying an unquestionable purpose to insist on the cancelation."

The notice here in question was dated May 23, 1945, and requested the cancelation of the policy "as of today." This notice was mailed on May 25, and was received by the Insurance Company on May 28.

It is argued that the notice fails to comply with the provisions in the policy in that it did not fix a date "thereafter" when the cancelation was to become effective, but undertook to make the cancelation effective at once. If we comprehend the significance of this argument, it is that if the notice had requested cancelation of the policy "as of tomorrow," then it would have been sufficient. This extremely technical reasoning will not, we think, stand analysis.

The sufficiency of notices undertaking to cancel policies, effective at a time short of that stipulated in the contract, has frequently been before the courts. It usually arises where the insurance company gives the insured a notice that his contract is terminated "immediately," or within a time short of that specified in the policy.

With respect to such notices, 29 Am. Jur., Insurance, sec. 284, p. 264, says: "While there are cases opposed, or at least apparently opposed, the view generally taken is that any notice otherwise sufficient in form, which clearly conveys to the insured notice of cancelation, is effective after lapse of the full time stipulated in the policy, whether it is a notice of immediate cancelation of a policy contemplating cancelation only after notice, or whether the notice given, while not notice of immediate cancelation, is shorter than that stipulated in the policy. The view is reasonable, for the only purpose of the notice to be given by the company upon cancelation is to enable the insured to obtain insurance elsewhere before he is subjected to risk without protection, and it finds the support of both the majority and the better considered of the cases."

See also, 45 C. J. S., Insurance, sec. 450, pp. 91, 92; 6 Couch. Cyc. of Insurance Law, sec. 1437, p. 5087; Anno: 35 A. L. R. 899, 126 A. L. R. 1110; *Seaboard Mut. Cas. Co. v. Profit*, C. C. A. 4, 108 F. (2d) 597, 126 A. L. R. 1105; *All States Service Station v. Standard Oil Co.* (App. D. C.), 120 F. (2d) 714, 715.

The same principle was applied with respect to a cancelation notice by the insured, in *Ocean Accident, etc., Corp. v. Felgemaker*, C. C. A. 6, 143 F. (2d) 950, 953. There the policy provided for optional cancelation upon written notice of either party stating the date "not less than fifteen days thereafter" when such cancelation should become effective. On October 4, 1940, the insured sent a written notice to the company requesting that the policy be canceled, effective October 1, 1940. The district court held the notice insufficient to cancel the policy. The Circuit Court of Appeals reversed the judgment and held that the

notice should be treated as effective to cancel the policy at the expiration of the fifteen-day period.

Applying the same principle to the case at bar, we are of opinion that the notice, dated May 23, 1945, requesting that the policy be canceled effective "as of today," was sufficient to cancel the policy on the date that it was received by the Insurance Company, namely May 28, if not on May 25, the date the notice was mailed. Either of these dates· is after the date of the notice.

The purpose of the provision in the policy requiring that the notice from the insured shall state "when *thereafter* such cancelation shall be effective," is, we think, merely to forestall a retroactive notice. That purpose is, of course, accomplished here when the notice, dated May 23, is treated as effective on May 25, two days later.

Next it is argued that the cancelation notice was conditioned upon the return of the unearned premium to the insured. But that is not so. Sharp's letter does not make the cancelation of the policy conditioned upon the return of the premium. The letter in one paragraph says: "Please cancell my Pol. as of today." In a new paragraph the writer says: "Please return my unearned prem." There is nothing to indicate that the cancelation was to be ineffective until he had been paid the unearned premium. Moreover, he says: "I am getting rid of my car and will not need insurance." Regardless of whether he was to receive any return premium, he had no further need for the coverage.

It is argued that it was not the intent of the insured to have canceled the policy when he was to receive no return premium, and when the amount which he had already paid would have carried the risk to June 9, the expiration ·date of the policy.

The answer to this is that we must judge the writer's intent by what he said. There is nothing to suggest that the cancelation was to be ineffective if he was entitled to no refund. In plain unmistakable language he requested that the policy be canceled without making any inquiry as

to these matters. Apparently he assumed that some amount would be refunded to him, but took no trouble to ascertain whether this was correct. Since the premium for the six-month period was $19.45, and the policy had only about two weeks to run, he is bound to have known that the amount of the refund, if any, would have been negligible. Then, too, as he said, he had sold the car and had no further need for insurance, irrespective of any refund.

Next, it is said, the Insurance Company did not treat the policy as having been terminated by Sharp's letter of May 23; that in response thereto it wrote Sharp, on May 29, that his request had been referred to its local agent "for attention;" that the local agent undertook to have him execute a formal "Policyholder's Cancellation Notice;" and that thereafter it solicited him to "renew" the policy.

There might have been considerable force to this reasoning had it been shown that Sharp had in any way relied on or been misled by these acts as an indication that the policy was still in force. In such a situation the Insurance Company might have been estopped to deny the cancelation on which it now relies. But there is not the slightest evidence of such reliance. Indeed, there is no such contention in the briefs.

The solicitation for a renewal of the policy was after the occurrence of the accident and could not have misled him to his prejudice. We do not know from the record whether Sharp had actually received the local agent's request for the execution of the formal cancelation notice, mailed on June 4, before the accident occurred the next day. Here, too, there is no showing of prejudice.

The only act of the Insurance Company of which we know that Sharp was actually aware before the accident was its letter to him of May 29. And there is not a scintilla of evidence that Sharp, as a result of this letter, thought that the policy was, despite his cancelation notice, still in force.

It is, of course, elementary that in the absence of a showing of such reliance the principle of estoppel does not

apply. *Repass* v. *Richmond*, 99 Va. 508, 511, 39 S. E. 160; *Parker* v. *Murphy*, 152 Va. 173, 189, 146 S. E. 254; *American. Nat. Bank* v. *Ames*, 169 Va. 711, 738, 739, 194 S. E. 784, 793.

There being no principle of estoppel involved, what other effect, if any, did the conduct of the Insurance Company have on the rights of the parties? None whatsoever.

Even if the Insurance Company did not regard Sharp's letter of May 23 as a sufficient cancelation of the policy, that did not alter the rights of the parties. The sufficiency of the notice turned upon a proper interpretation of the cancelation provision in the policy. As has been said, if the letter complied with the terms of the provision the contract was at an end without the acquiescence of the Insurance Company and regardless of how it may have viewed the matter.

Suppose Sharp, after having written the letter of May 23, had been entitled to the return of a part of the unearned premium. Could the Insurance Company have successfully defended a suit to recover it by saying that he had not signed a request for cancelation of the policy in the form prepared by it? Certainly not. Sharp could have stood upon his letter as a sufficient compliance with the terms of the policy to entitle him to the refund.

Again, unsuccessful efforts on the part of an insurance company to induce the insured to continue the policy do not vitiate a proper notice of cancelation. *Union Marine, etc., Ins. Co.* v. *Kuljis, supra*. If this were not so, the unearned premium to which the insured was entitled might be consumed during the negotiations.

For these reasons we are of opinion that the lower court erred in holding that the policy had not been terminated before the accident of June 5, 1945.

Since the rights of the judgment creditor, Mrs. Pederson, can rise no higher than those of Sharp, the insured (*Indemnity Co.* v. *Davis*, 150 Va. 778, 788, 143 S. E. 328), the judgment complained of must be reversed and a final

judgment entered in favor of the garnishee Insurance Company. It is so ordered.

*Reversed and final judgment.*

SPRATLEY, J., dissenting.

While technical rules and precedent may justify a reversal of this case, it seems to me that the right of the case demands affirmation of the judgment of the trial court. Substantial justice is the goal of our jurisprudence. Its substance is not reached by words of praise but in appropriate action. Where a strict application of harsh technical rules will lead to injustice, we are justified in looking for sound reasons of avoidance.

I think the right of this case can be found by a reasonable interpretation of the letter of the insured to the insurer relative to the cancellation of his policy. The insured is a layman unlearned in the requirements of legal construction. His letter should be read as a whole, in the light of the situation confronting him at the time it was written. His proposition of cancellation was based upon the thought that he would dispose of his car and get a return of unearned premium, thus leaving him in no need of insurance. He did not intend to cancel his insurance against loss or surrender any right, except under the happening of the named circumstances. If he had discussed the cancellation of his policy of insurance with an agent of the insurer, and had been advised that he would receive no return premium upon cancellation, he would not have insisted upon a cancellation, or desired one as long as he owned the car.

The three sentences of the letter cannot be separated from the context of the whole letter. If there had been specific words of conditional cancellation based upon return of premium, or disposal of his car, undoubtedly we would have held the cancellation effective only upon the performance of the condition. In making the insurance contract it was never contemplated by either of the parties that the insured would request or require a cancellation unless

he got a portion of his premium refunded, or disposed of his interest in the property insured.

In order for the cancellation to have been effective, there must have been an unconditional order of cancellation, and an acceptance of the offer as made. The right to cancel was contractual. Upon the subject of cancellation, the minds of the parties never met. The conditions precedent were never performed. The insurer did not accept the request of the insured. It was merely referred to their agent. The most that can be said is that a cancellation was in contemplation but was never, in fact, made upon the terms of the offer of the insured.

In *Virginia Hardwood Lbr. Co.* v. *Hughes*, 140 Va. 249, 257, 124 S. E. 283, we approved the following statement from 9 Cyc., page 265, as follows:

" 'The offerer has a right to prescribe in his offer any conditions as to time, place, quantity, mode of acceptance, or other matters, which it may please him to insert in and make a part thereof, and the acceptance to conclude the agreement must in every respect meet and correspond with the offer, neither falling within or going beyond the terms proposed, but exactly meeting them at all points and closing with these just as they stand.' "

See also, *John R. Davis Lbr. Co.* v. *Hartford Fire Ins. Co.*, 95 Wis. 226, 70 N. W. 84, 37 L. R. A. 131, 137.

In 45 C. J. S., Insurance, page 117, section 458, this is said:

"The notice or request must be unconditional and absolute, and a conditional request for cancellation is not sufficient if it is not accepted by the company. The question whether a communication should or should not be construed as a notice of or request for cancellation will depend on the intent of the writer or speaker as ascertained from the whole instrument or all the circumstances, and doubts will be construed against cancellation."

It is inconceivable to me that the insured intended to give the insurer anything of value or surrender any right without consideration or change of position. We are not required

to believe that which normal and reasonable men know from experience to be incredible.

Again, the insurer received full compensation for the risk, at the rate required to protect it for loss. For that compensation, it should bear the liability it assumed. The insurer owed to the insured nothing more and owed him nothing less.

For these reasons, it seems to me that the offer of cancellation may be read in the light most favorable to the insured, and thus be distinguished from the cases cited in the majority opinion.