[No. D007674. Fourth Dist., Div. One. Apr. 10, 1989.]

MARIETTA S. COE et al., Plaintiffs and Appellants, v.
FARMERS NEW WORLD LIFE INSURANCE COMPANY et al.,
Defendants and Respondents.

## COUNSEL

Wilson & Yale and Eugene P. Yale for Plaintiffs and Appellants.

Cotkin, Collins & Franscell, William D. Naeve, Lewis D'Amato, Brisbois & Bisgaard, Patricia E. Mundy and R. Gaylord Smith for Defendants and Respondents.

## OPINION

**FROEHLICH, J.**—Plaintiff Marietta S. Coe (Mrs. Coe) brought suit to recover the proceeds of a life insurance policy on the life of her husband, Lewis R. Coe (Coe). She joined as defendants not only the insurance company (Farmers) but also the agent who sold the policy (Hannify). Her amended complaint stated causes of action for breach of contract and negligent and intentional torts. The trial court granted both defendants' motions for summary judgment, as to all causes of action.

The essential facts of the case are undisputed. Coe purchased a $50,000 policy on his life on February 10, 1983. Premiums were paid monthly in accordance with an automatic deduction plan from his checking account. The policy provided for a "grace period" as follows: "GRACE PERIOD —If premiums are not paid when due, your policy will continue in force for an additional 31 days. If your premium is unpaid at the end of this grace period, your policy will be void except as provided in the Guaranteed Values section. If you should die during the Grace Period, a monthly premium will be deducted from the proceeds."

In February of 1984 Coe's employment changed, causing him to conclude he had no further need for the Farmers insurance coverage. He called Hannify's office and directed that his policy be cancelled. The office, by covering letter dated February 27, 1984, sent Coe a printed insurance form titled "Miscellaneous Change Request." The form contained 12 preprinted

potential insurance changes (i.e., address change, change of mode of premium payment, etc.). Under a final box titled "Other Request," the instruction "Cancel" was handwritten. Coe executed the form and returned it to the Hannify office on or about March 1, 1984.

As of the date of delivery of cancellation notice Coe had paid the premium for the monthly period ending March 10, 1984. If a grace period were to be applicable to extend the coverage date of the policy, it would extend 31 days from March 10, or through April 10. Coe died on April 8. Mrs. Coe subsequently made demand upon Farmers for the policy proceeds, contending that death occurred during the grace period. Farmers denied the claim on the ground that the policy had been cancelled as of March 10.

The issue thus posed is whether a voluntary cancellation of a life insurance policy, by mutual agreement of the insured and the insurer, causes forfeiture of the contractual grace period. Mrs. Coe contends the grace period is a benefit imposed for public policy reasons and cannot be waived by agreement of the parties. She also contends any purported waiver is unenforceable because it is not supported by consideration. In her tort causes of action is included a claim of negligence as to Hannify for failing to advise Coe that by cancellation rather than lapse in premium payment he would be gratuitously waiving a benefit otherwise vested by the policy.

The defendants reply by arguing an insured always has an unconditional right to cancel his policy, and once cancelled all rights derived from the policy terminate. The grace period, it is contended, is designed to benefit the insured who inadvertently fails to make a premium payment—the provision is intended to avoid unintended policy termination, and has no application to a situation in which the insured instructs the policy cancellation.

I

## CONTRACTUAL REMEDY

The 31-day grace period is a contractual provision of the insurance policy. Although similar grace periods are mandated by statute in many states (see 14 Appleman, Insurance Law and Practice (rev. 1985) § 7959, p. 323 et seq.), there is no statutory requirement for same in California.[1]

---

[1] Appellant contends California Insurance Code section 10244 mandates a 30-day grace period in all life insurance policies. The mandatory provision of section 10244, however, is part of the chapter on burial contracts. The imperative requiring inclusion of a grace period is "no funeral insurance contract shall be issued or delivered in this State upon the life of any person in this State unless it contains in substance the following provisions. . . ." California Insurance Code section 10240 provides that "A 'funeral insurance contract' is a life policy

Therefore, modification of grace period benefits would appear to be a matter of contract law rather than restricted by any statutorily imposed public policy.

It can be contended that benefits afforded insureds by statute, in that they are governmental attempts to protect parties with weak bargaining powers, should not be waivable by contract. Where a grace period is mandated by statute, therefore, the insurer should not be able to bargain it away by special contract waiver. If the special benefit is not waivable at the inception of the contract, it seems logical that it should not be waivable during or upon termination of the contract. This was the result reached in *Satery* v. *Great American Reserve Insurance Co.* (Tex.Civ.App. 1955) 278 S.W.2d 377, where the court held that cancellation of a policy after commencement of the statutorily required grace period did not annul the grace period benefits. Permitting such waiver would, in the words of the court, "result in nullification of the statute, destruction of its protection, and a return to the footing which, before the enactment of the statute, was considered unequal." (*Id.* at pp. 378-379.)

Where the obligations of the parties are governed only by contract, however, no restriction against modification of the obligations through free bargaining is perceived.[2] The communications between Coe and the insurance company are clear, in writing, and reflect mutual assent. Whether Coe may have been in any respect mistaken in his action to cancel the policy is a matter not before us, because neither rescission nor reformation was among plaintiff's causes of action. ■ We are troubled, however, by the issue of consideration. ■ Consideration is a required element for the formation of any contract, and it is also generally necessary for the enforceability of an agreement discharging a contract. (1 Witkin, Summary of Cal. Law (9th ed. 1987) Contracts, §§ 207, 875, pp. 216, 787.)

■ Coe, at the time of his decision to cancel, was the owner of a policy in full force and effect. By simply failing to pay the March premium he

---

embodying an agreement . . . to embalm or dispose of, or expressly to procure or pay or to provide funds for, in whole or in part, the embalming or disposal of the remains of any person . . . ." While some ordinary life contracts might, we presume, include a provision for reimbursement of burial expense, and hence be deemed to come within section 10240, we find nothing in the California Insurance Code or otherwise which would indicate that section 10240 applies to *all* life insurance contracts. Our examination of the policy in issue reveals no provision for funeral insurance. We therefore conclude appellant is in error when she asserts the statutory grace period to be applicable.

[2] It is to be noted that California *does* have statutory restrictions precluding complete forfeiture of policy benefits for nonpayment of premiums. California Insurance Code sections 10160 through 10164.1 provide for payment or substitution benefits for the cash surrender value of a terminated policy. In Coe's case the policy had not been in effect long enough to have a cash surrender value.

would have availed himself of the extended grace period coverage through April 10. His voluntary cancellation terminated his coverage on March 10. Where is the consideration flowing to Coe, the insured, for giving up this month of coverage?

Convincing authorities on this issue—all out of state because there are none in California—do not seem to consider the lack of consideration an impediment to effective cancellation of the policy. The United States Court of Appeal, Fifth Circuit, was faced with essentially the same case in *Nicolson* v. *Life Ins. Co. of Southwest* (5th Cir. 1986) 783 F.2d 1316. As here, the insured had requested termination of the policy, and the insurance company complied with written notice of termination as of the date to which premiums had been paid. The insured then died within the next 30 days. The court found the grace period to be a continuation of the policy " 'before the overdue premiums or the deferred premiums' are paid." Where a policy is cancelled, the court reasoned, no "overdue" or "deferred" premiums remain; therefore the grace period has no application. Lack of consideration to support the grace period waiver was not discussed. (*Id.* at p. 1319.)

A similar result was obtained by the Kansas Court of Appeals in *Bennett* v. *Colonial Life & Acc. Ins. Co.* (1982) 7 Kan.App.2d 441 [643 P.2d 1133]. Again, a voluntary cancellation of a life policy was followed within what would have been the grace period by the death of the insured. The rights of the parties were analyzed on traditional contract law principles, the court ruling that "[t]he rules governing the cancellation of an insurance contract by mutual consent are the same as those governing the cancellation of any contract by mutual consent. . . . There must be a meeting of the minds of the parties." (643 P.2d at p. 1135.) A grace period relates, the court reasoned, to the date when a premium is due. When the policy is cancelled by mutual assent of the parties, no further premiums are due, the insurance policy expires, and the grace period provided by the policy has no application. (643 P.2d at p. 1136.) Again, no reference to the lack of consideration is made.

Our research indicates that, with a few exceptions (see, e.g., *Satery* v. *Great American Reserve Insurance Co., supra,* 278 S.W.2d 377), cancellation of insurance policies at the instance of the insured is recognized without reference to any requirement of new consideration. The leading authority in California is *Glens Falls Ins. Co.* v. *Founders' Ins. Co.* (1962) 209 Cal.App.2d 157 [25 Cal.Rptr. 753, 3 A.L.R.3d 1058]. While the facts of *Glens Falls* are very different from those of our case (fire insurance rather than life, oral ineffective notice of cancellation), the language of the opinion is nevertheless instructive: "The sole requirement to effect a cancellation by the insured is a definite and unconditional request for cancellation actually communicated to the company. [Citations.] While the insured can cancel

forthwith at any time by request, the request for cancellation must be unequivocal and absolute. [Citations.] No formal or written notice of cancellation is required [citations]; the surrender of the policy is not a prerequisite to cancellation [citations]; nor is the return of the unearned premium a condition precedent to cancellation." (*Id.* at p. 165.) The balance of the opinion refers several times to the necessity of "mutual assent" in the cancellation of a policy, but never mentions consideration.

Secondary authorities, also, refer to cancellation of insurance policies by the insured as requiring no more (absent specific policy provisions) than notice from the insured. Appleman states that cancellation is achievable by notice from the insured, and further: "A request for cancellation of a policy must be unequivocal and absolute. Such a request alone has been held to be sufficient to terminate the policy; no surrender of the policy being necessary, nor any affirmative act on the part of the insurer." (6A Appleman, Insurance Law and Practice (1972) § 4226, pp. 652-654.)

The sections in American Jurisprudence Second on cancellation of insurance policies similarly do not mention new consideration. The requirement is that "cancellation . . . be by the consent of the parties, express or implied from the circumstances. . . ." (43 Am.Jur.2d, Insurance, § 415, p. 483.) "Whether cancellation by mutual agreement has been effected depends on the intention of the parties as evidenced by their acts, conduct, and words, taken in connection with the attendant circumstances. There must be a meeting of minds, or mutual assent, to constitute a valid cancellation, and each party must act with knowledge of the material facts." (*Id.* at § 416, p. 484.)

Why is it that consideration is not required to support the new agreement reflected by cancellation? Perhaps it derives from unique qualities inherent in the insurance contract. Williston confirms that consideration is necessary in the inception of the insurance contract (7 Williston, Contracts (3d ed. 1963) § 907, pp. 308-309), but then elaborates on the special terms of the contract as follows: "What is the nature of the insured's obligation to pay premiums under a policy of life insurance? Can he be sued in debt for failure to pay his premiums as they fall due? All courts agree that he cannot; he has nowhere in his application or policy promised to pay premiums. What then is the nature of the insurance company's promise? Although there is respectable authority to the contrary, the great weight of authority holds that a contract of insurance is a single, indivisible agreement of the company for the agreed period of time, subject to defeasance or 'lapse' by the occurrence of the condition subsequent—the insured's refusal or failure to pay a premium when due." (*Id.* at § 907, p. 311.)

The insurance contract, then, is a continuing obligation by the insurance company to pay benefits, subject to the unilateral power of termination by the insured. The insured is free to terminate by failing to make premium payments. He is also free to terminate or "cancel" by any means provided in the policy or by local statute or common law. Cases considering the insured's unilateral and unfettered power of termination emphasize this right. In *DeLaPerriere* v. *American Home Assurance Ins. Co.* (1962) 106 Ga.Ct.App. 516 [127 S.E.2d 478], reviewing the requisites for cancellation, the court states: "It is true that to be effective the notice must be received by the insurer [citations], but nothing more is required except that the notice conform to the terms of the contract of insurance. . . . The right to terminate the contract at any time on request constituted a continuing offer by the company which, when accepted by the insured by exercising the right conformable to the terms of the policy, immediately revoked the contract without any further action on the part of anyone. . . . '[W]here a notice to cancel a policy is given in accordance with its terms, the contract is ipso facto terminated, and the obligation of the insurance company to return the unearned premium, if any, to the insured merely creates the relationship of debtor and creditor between the company and the insured . . . .' [*State Farm Mutual Automobile Ins. Co.* v. *Pederson,* 185 Va. 941, 41 S.E. 2d 64, 67.]" (127 S.E.2d at pp. 479, 480.)

Affirmation of the unilateral continuing power of cancellation held by the insured is illustrated by other cases from various jurisdictions. See, e.g., *State Farm Mut. Automobile Ins. Co.* v. *Pederson,* (1947) 185 Va. 941 [41 S.E.2d 64, 68], relied upon in *Hardware Mutual Casualty Company* v. *Beals* (1959) 21 Ill.App.2d 477 [158 N.E.2d 778], which affirmed the effectiveness of unilateral notice of cancellation from an insured: "[W]hen cancellation is made by the insured the company may sit back and do nothing. It need not go through the physical motion of actually canceling the policy; it need not reply; it need not acknowledge receipt of the notice; it need not even return the unearned premium except upon demand since all contractual relations are at an end, with only a debtor-creditor relation existing for return of the unearned premium." (158 N.E.2d at p. 782.)

In harmony with these authorities, we therefore hold that cancellation of Coe's life insurance policy was subject only to his unilateral communication of his desire to cancel. This was accomplished, and no new or special consideration was necessary to support termination of the policy. The policy having been terminated before commencement of any grace period, the provisions of the policy pertaining to grace periods have no application. The judgment of the trial court dismissing the contract cause of action must be sustained.

## II

### TORT CAUSES OF ACTION

■  In addition to the contract action on the insurance policy, Mrs. Coe sought damages under various tort theories: "Breach of Duty of Fair Dealing and Good Faith," "Breach of Fiduciary Duties," "Breach of Statutory Duties," "Negligence," "Tortious Interference with Prospective Economic Advantage." The moving paperwork relating to the summary judgment motion and the response thereto touch very lightly, if at all, on these causes of action. The parties seem to have accepted the proposition that the heart of the case was the contractual issue of termination of grace period benefits upon cancellation of the policy. In that the appeal *was* taken from the dismissal of all causes of action, however, we proceed to consider the tort causes.

Most of the tort causes of action fall automatically upon our determination that the insurance company correctly denied applicability of grace period benefits. The "Breach of Duty of Fair Dealing and Good Faith" cause of action relates to alleged bad faith in failing to pay policy benefits. The "Breach of Fiduciary Duties" claim alleges the same facts in terms of fiduciary obligations. The "Breach of Statutory Duties" cause of action is based upon California Insurance Code sections requiring reasonable investigation and settlement of claims. The cause of action denominated "Tortious Interference with Prospective Economic Advantage" attempts to characterize the conduct of Farmers and Hannify in terms of a malicious interference with Mrs. Coe's expectation of beneficial insurance proceeds. All of these causes of action depend upon an initial determination that Farmers' action in refusing to pay death benefits was wrongful. Having concluded Farmers' position to be justified, the summary judgment as to these causes of action must be affirmed.

■  The final cause of action is for negligence, and is stated against defendant Hannify only. This cause of action asserts (or at least could be amended to assert) negligence by the agent Hannify in handling Coe's request for cancellation. A plausible theory of action is that Hannify, the fiduciary and agent of Coe, had an obligation to render careful advice when faced with his client's request for cancellation. Hannify did attempt to dissuade Coe from cancelling, but failed to advise him that the cancellation method selected was one which would gratuitously waive the one-month grace period.

Reply papers filed in the trial court argue that Hannify had no duty to advise Coe as to the proper method of canceling his policy. We conclude

that, the negligence cause of action having been adequately pleaded, issues were raised which were not conclusively resolved by this evidentiary documentation. Triable issues of fact remain, including the nature and extent of Hannify's duty to Coe and whether Hannify exercised due care in fulfilling that duty. The motion for summary judgment as to Hannify, based upon alleged negligence, should have been denied.

## III

### DISPOSITION

The judgment in favor of defendant Farmers on all causes of action is affirmed. The judgment in favor of Hannify on all causes of action except the cause of action for negligence is affirmed; the portion of the judgment dismissing the cause of action for negligence is reversed, and the cause remanded to the proceedings in accordance with the views expressed in this opinion.

Work, Acting P. J., and Todd, J., concurred.

A petition for a rehearing was denied May 3, 1989.