COURT OF APPEALS OF VIRGINIA

Present:  Judges AtLee, Friedman and Callins
Argued at Richmond, Virginia

**PUBLISHED**

NORTHERN NECK INSURANCE COMPANY

OPINION BY
v.       Record No. 1954-23-2          JUDGE RICHARD Y. ATLEE, JR.
SEPTEMBER 17, 2024

VIRGINIA FARM BUREAU MUTUAL INSURANCE
 COMPANY, ET AL.

FROM THE CIRCUIT COURT OF ALBEMARLE COUNTY
Cheryl V. Higgins, Judge

Alexander S. de Witt (Butler Snow, LLP, on briefs), for appellant.

Justin S. Gravatt (Duane, Hauck, Davis, Gravatt & Campbell, P.C.,
on brief), for appellee Virginia Farm Bureau Mutual Insurance
Company.

No brief or argument for appellee Kira Shifflett.

This appeal involves a coverage dispute between two insurance companies. The circuit court granted summary judgment for appellee Virginia Farm Bureau Mutual Insurance Company, finding that Farm Bureau's policy was canceled prior to the loss at issue. Appellant Northern Neck Insurance Company appeals that decision. Northern Neck raises multiple assignments of error, but they can be broadly condensed to the following arguments: (1) the Farm Bureau policy was not canceled according to the terms of the policy prior to the loss, (2) the post-loss cancellation cannot retroactively terminate the policy to a pre-loss date, and (3) the circuit court erred by relying on the insureds' property settlement agreement to find that the cancellation attempt "substantially complie[d]" with the policy requirements. Because we find the Farm Bureau policy was not effectively canceled according to the terms of the policy prior to

the loss, we reverse the decision of the circuit court and remand for further proceedings consistent with this opinion.

## I. BACKGROUND

Michael and Kira Shifflett, who married in 2007, purchased a property on Glendower Road in Scottsville, Virginia. They owned the property jointly. After purchasing the property, the Shiffletts obtained an insurance policy for the property through Farm Bureau, and both parties were listed on the policy as named insureds.[1] The Shiffletts separated, and on September 2, 2020, they entered into a property settlement agreement that allocated the property to Kira.[2] The agreement also required each of them to "execute any documents or perform any act which may be required or necessary to carry out and effectuate any of the purposes and provisions" of the property settlement agreement.

On October 5, 2020, Kira obtained a new insurance policy for the property through Northern Neck. That same day, Kira contacted Farm Bureau about canceling the policy with them. The Farm Bureau policy's cancellation provision provided, "**Cancellation and Nonrenewal** – 'You' may cancel this policy by returning the policy to 'us' or by giving 'us' written notice and stating at what future date coverage is to stop." It defined "You" as "the person or persons named as the insured on the 'declarations'." Kira submitted a Request to Cancel or Reduce Insurance form, requesting cancellation effective that day, October 5. Michael, however, did not sign that form. Because Michael was a named insured, Farm Bureau tried to obtain Michael's written consent to cancel the policy.

---

[1] The policy period for the policy at issue on appeal was from May 5, 2020, to May 5, 2021.

[2] Michael remained on the title of the property until December 11, 2020, when a deed divesting him of his interest was executed. The deed was recorded with the Albemarle County Circuit Court on or about December 15, 2020.

On November 6, 2020, a fire damaged the property. Kira submitted a claim through Northern Neck. At some point, Northern Neck required Kira to file a claim with Farm Bureau. At the time of the fire, Farm Bureau had not yet received Michael's written consent to cancel the policy.

On December 3, 2020, Kira called Farm Bureau and was informed that Farm Bureau had been unable to complete the cancellation request. That same day, Michael signed a Request to Cancel or Reduce Insurance form, seeking to cancel the Farm Bureau policy. Although the form was dated December 3, Michael listed the effective date of cancellation as October 5, 2020. On December 4, Farm Bureau processed the cancellation request and sent Kira a "Notice of Cancellation," confirming the cancellation and listing the effective date of cancellation as October 5, 2020. Farm Bureau also returned the "unearned" premium dating back to October 5. Farm Bureau then denied Kira's claim, referring to the cancellation of the policy effective October 5, 2020.

Ultimately, Northern Neck paid the damages from the loss, but it reserved the right to challenge Farm Bureau's policy cancellation and coverage denial. Northern Neck filed a declaratory judgment action against Farm Bureau and Kira,[3] asking the circuit court to find that the Farm Bureau policy was in effect at the time of the loss and to require Farm Bureau to pay its pro rata share of the loss. Neither party disputed the operative facts, and both parties filed motions for summary judgment.

Northern Neck argued that the post-loss cancellation to a pre-loss date was ineffective because the cancellation did not comply with the terms of the Farm Bureau policy. It also argued

---

[3] Kira filed an answer, asserting that she was named in the lawsuit "solely because of her interest in the subject Property." Though she complied with discovery requests, she did not otherwise participate in the proceedings in the circuit court, and she has not participated in the case on appeal.

that Farm Bureau could not retroactively cancel a policy to a date preceding a loss that had occurred while the policy was in full force and effect. Farm Bureau argued that the policy was properly canceled on October 5, 2020. It acknowledged that it did not receive Michael's signature before the loss but contended that was irrelevant, pointing to the Shiffletts' property settlement agreement and the fact that Kira had requested cancellation as of October 5, 2020.

After a hearing on the motions, the circuit court granted Farm Bureau's motion for summary judgment. Rather than rely solely on the terms of the insurance policy, however, the circuit court referred to the property settlement agreement. The agreement allocated the property to Kira, and the circuit court noted that if Michael had the ability to limit cancellation of the policy, "he could potentially hold her hostage in violation of the separation agreement" by requiring her to "make payments on a policy that she never wanted to keep in full force and effect simply by not cooperating with what is required." Thus, although Michael "signed the agreement and did not include a future date," the circuit court found that his written notice of cancellation, which was consistent with what Kira wanted, "substantially complies under the facts of this case." Therefore, the circuit court granted Farm Bureau's motion for summary judgment and dismissed the case with prejudice. Northern Neck now appeals.

II. ANALYSIS

Northern Neck argues that the circuit court erred by granting summary judgment to Farm Bureau. It contends that the Farm Bureau policy was still in effect at the time of the fire loss and that it had not been canceled in compliance with the terms of the policy. It also argues that the circuit court erred by relying on the terms of the property settlement agreement.

"In an appeal from a circuit court's decision to grant or deny summary judgment, this Court reviews the application of law to undisputed facts de novo." *Erie Ins. Exch. v. EPC MD 15, LLC*, 297 Va. 21, 27 (2019) (quoting *St. Joe Co. v. Norfolk Redevelopment & Hous. Auth.*,

283 Va. 403, 407 (2012)). "At the center of this appeal is the construction and application of the terms of an insurance contract, which are issues of law that we review de novo." *Id.* (quoting *Bratton v. Selective Ins. Co. of Am.*, 290 Va. 314, 322 (2015)).

"Courts interpret insurance policies, like other contracts, by determining the parties' intent from the words they have used in the document." *Erie Ins. Exch. v. Jones*, 301 Va. 61, 66 (2022) (quoting *Va. Farm Bureau Mut. Ins. v. Williams*, 278 Va. 75, 80 (2009)). "In the context of insurance policies, this rule means that a judicial interpretation should conform to the plain meaning that reasonable insurers and insureds likely would have attributed to the words." *EPC MD 15*, 297 Va. at 28. "Each phrase and clause of an insurance contract should be considered and construed together and seemingly conflicting provisions harmonized when that can be reasonably done, so as to effectuate the intention of the parties as expressed therein." *Seals v. Erie Ins. Exch.*, 277 Va. 558, 562 (2009) (quoting *Floyd v. Northern Neck Ins.*, 245 Va. 153, 158 (1993)).

Relevant here, Farm Bureau's cancellation policy provides, "'You' may cancel this policy by returning the policy to 'us' or by giving 'us' written notice and stating at what future date coverage is to stop." The policy specifically defines "You" as "the person or persons named as the insured on the 'declarations'." This cancellation policy is similar to those addressed in other cases. *See, e.g.*, *State Farm Ins. Co. v. Pederson*, 185 Va. 941, 946 (1947) ("This policy may be canceled by the named insured by mailing to the company written notice stating when thereafter such cancelation shall be effective."); *State Farm Mut. Auto. Ins. v. Miller*, 194 Va. 589, 591 (1953) (same); *Ampy v. Metropolitan Cas. Ins.*, 200 Va. 396, 400 (1958) (describing the policy as "very similar to the one" in *Pederson*).

Under these types of provisions, the consent of the other party is not required to cancel. *Miller*, 194 Va. at 593. Where, as here, the insurance policy provides for it, both the insured and

the insurer can unilaterally terminate the policy by complying with the specific terms of the insurance policy. *Id.* While the cancellation does not have to come in a specific form, the insured's "notice or request must be unconditional and absolute, and [it] must conform to the requirements of the policy." *Pederson*, 185 Va. at 950. "Whether a particular communication should or should not be construed as a notice or request for cancelation will depend upon the intent of the insured as ascertained from his communication or all the circumstances." *Id.* But the sufficiency of the notice "turn[s] upon a proper interpretation of the cancelation provision in the policy." *Id.* at 954. The question before us is whether the policy was effectively canceled in accordance with the requirements of the policy prior to the date of the fire loss.

Farm Bureau's policy requires written notice of cancellation and a statement of what "future date" coverage is to end. The language of the policy requires notice from the "person or persons named as the insured," meaning that where, as here, there are multiple named insureds, each named insured must comply with the cancellation requirements. Nothing in the Farm Bureau policy permits the actions of one named insured to bind all other named insureds. *See, e.g.*, *Spielberg v. Progressive Select Ins.*, 315 So. 3d 1, 5 (Fla. Dist. Ct. App. 2021) (allowing a named insured to unilaterally cancel because the policy provided that "[i]f there is more than one named insured on this policy, any named insured may cancel or change th[e] policy"); *Schany v. West Bend Mut. Ins.*, 847 N.W.2d 613 (Iowa Ct. App. 2014) (involving a policy with a provision allowing "any named insured" to cancel or change the policy). There is no dispute that both Michael and Kira submitted a written request to cancel the policy, and both requests are clear and unambiguous.

But the cancellation must also comply with the terms of the policy, and the policy requires the notice to state what "future date" the coverage is to end. Michael's notice did not state a future date. His notice was signed on December 3, 2020, but listed a cancellation date of

October 5, 2020. In *Pederson*, the Supreme Court considered a similar cancellation provision that required the insured to state "when thereafter such cancelation shall be effective." *Pederson*, 185 Va. at 946. The insured's notice requested cancellation "as of today." *Id.* at 947. The plaintiff argued that the cancellation was ineffective because it did not provide a date "thereafter." *Id.* at 950. The Supreme Court rejected that "extremely technical reasoning," as the purpose of the "thereafter" provision was to "forestall a retroactive notice." *Id.* at 950, 952.

While the language of the Farm Bureau policy is slightly different, referring to the "future date" rather than "when thereafter," we find the provision in the Farm Bureau policy is likewise intended to prevent a retroactive cancellation of the policy. Thus, while Michael's notice of cancellation lists October 5, 2020, it was not signed or submitted until December 3, and the language of the policy prohibits such a retroactive cancellation. Therefore, under the plain language of the Farm Bureau policy, Michael's notice of cancellation was not permitted to retroactively cancel the policy effective October 5.

Despite the clear language of the Farm Bureau policy, the circuit court found that Michael's notice "substantially complie[d]" with the requirements of the policy. Rather than considering only the terms of the insurance policy, however, the circuit court considered the Shiffletts' property settlement agreement, concerned that Michael would be able to "limit [Kira's] cancellation of the policy to a future date" and "hold [Kira] hostage in violation of the separation agreement." This was an improper consideration. Courts are required to construe contracts "as written." *PBM Nutritionals, LLC v. Lexington Ins.*, 283 Va. 624, 636 (2012) (quoting *Landmark HHH, LLC v. Gi Hwa Park*, 277 Va. 50, 57 (2009)). They are not permitted to make a new agreement or "add terms the parties themselves did not include." *Landmark*, 277 Va. at 57. To determine whether the policy was canceled in compliance with its terms, the circuit court was only permitted to consider the language of the policy itself.

We also reject Farm Bureau's argument that Michael's signature was unnecessary to cancel the insurance policy because he was contractually obligated to cooperate in canceling the policy. While the property settlement agreement contractually required Michael to sign and submit the cancellation notice, his obligation under a separate contract does not excuse or change what is contractually required to cancel under the insurance policy. If, at some point, Michael refused to sign or submit any necessary paperwork or otherwise violated the property settlement agreement, as both the circuit court and Farm Bureau considered, the result is a breach of that agreement. The proper remedy is to enforce the terms of the property settlement agreement, either through contract law or, where appropriate, through the court's contempt power. *Doering v. Doering*, 54 Va. App. 162, 170 n.2 (2009). The terms of the property settlement agreement have no bearing on the terms of the insurance policy.

To be effective, a notice to cancel an insurance policy must be clear and unambiguous, and it must be "given in accordance with its terms." *Pederson*, 185 Va. at 950. The policy specifically required cancellation by both "persons named as the insured," thus Kira's notice was not by itself sufficient to cancel the policy. Michael's notice of cancellation did not contain a "future date" as required, and instead listed a date in the past. The terms of the Farm Bureau policy specifically prohibit retroactive cancellation of the policy. The Shiffletts' property settlement agreement does not affect the terms of the insurance policy. Because the cancellation was not given in accordance with the terms of the policy, it was not effectively canceled on October 5. Consequently, the policy was still in effect at the time of the fire loss on November 6.

III. CONCLUSION

For the foregoing reasons, we reverse the decision of the circuit court and remand for proceedings consistent with this opinion.

*Reversed and remanded.*